United States Court of Appeals
Fifth Circuit

F I L E D

July 18, 2005

Charles R. Fulbruge III
Clerk

REVISED JULY 18, 2005

In the

# United States Court of Appeals
## for the Fifth Circuit

—————

m 04-50363

—————

ROSALINA DE LA O AND
MARIA CHRISTINA RIVERA,

Plaintiffs-Appellants,

VERSUS

HOUSING AUTHORITY OF THE CITY OF EL PASO, TEXAS,

Defendant-Appellee.

—————

Appeal from the United States District Court
for the Western District of Texas
m 3:02-CV-456-DB

—————

Before SMITH, DENNIS, and PRADO,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:

### I.

In 2000, Jesus de la O and Roberto Vasquez sued to challenge certain regulations of the Housing Authority of the City of El Paso ("HACEP"). Vasquez, who did not reside in any HACEP facility, was a candidate for chair of the El Paso County Democratic Party and sought to distribute literature and to campaign door-to-door at Sherman Oaks, a HACEP facility. De la O resided at the Sun Plaza Apartments (a HACEP-operated subsidized housing facility) and complained that the restrictions on political campaigning infringed on his First Amendment rights.

The challenged regulations included a "trespass after warning" policy and a policy restricting the distribution of flyers. These regulations were as follows:

**Rule D.2. Trespassing**. The development premises are for the exclusive use and enjoyment of the residents, members of their households, their guests and visitors, and such other persons who have legitimate business on the premises, e.g., law enforcement and other governmental personnel, utility service workers, HACEP contractors, and others as authorized by HACEP. All other persons will be regarded as trespassers subject to prosecution as allowed by state or municipal ordinance.

Any person who desires access to any development premises and any person found on the walks, ways, playgrounds, parking lots, drives and other common areas of the development premises will be required by any law enforcement or HACEP personnel to identify himself or herself and to prove authority to be on the development premises. Any person who refuses to provide personal identification or cannot show authority to be on the development premises will receive a 'trespass warning' ordering the person to leave the development premises or be subject to arrest and prosecution to the extent permitted by state law or municipal ordinance.

Any person observed by law enforcement or HACEP personnel violating any HACEP rule, or federal, state or municipal law, regulation, or ordinance will be ordered by law enforcement or HACEP personnel to leave the development premises.

**Rule D.5. Notices and Flyers**. HACEP does not allow door-to-door sales. If a resident desires to distribute notices or flyers in his development, the resident must obtain advance approval of the Development's Housing Manager and provide the Housing Manager with a copy of the proposed notice or flyer. A resident may not distribute a notice or flyer before 9:00 a.m. or after 8:00 p.m. Under no circumstances will a notice or a flyer be left in plain view on a resident's door if a resident of the unit is not at home or declines to answer the door. A resident distributing such flyers or notices must do nothing to allow the flyers or notices to become litter or which would disrupt the peaceful use and enjoyment of the other residents in the development or the residents' use of common areas.

*De la O v. HACEP*, No. 02-CV-456, at 2 n.3 (W.D. Tex. Mar. 24, 2004).[1]

The district court dismissed on summary judgment, holding the challenged regulations constitutional. On appeal, a panel of this court reversed, holding that "the manner in which HACEP seeks to accomplish its goal of crime prevention is unreasonable under the circumstances herein presented," and the regulations were therefore unconstitutional.[2] The case, however, was voted en banc, and after briefing

---

[1] The text excerpted above constitutes the rules in effect at the time of the district court's decision in the present action. Nevertheless, the rules in effect at the time of the first *de la O* (*Vasquez*) action appear to have been substantially identical.

[2] *Vasquez v. HACEP*, 271 F.3d 198, 204 (5th Cir. 2001), *vacated for reh'g en banc*, 289 F.3d 350 (5th Cir. 2002), *order denying motion to substitute party and granting motion to dismiss appeal as moot*, No. 00-50702 (5th Cir. Sept. 23, 2002), *cert. denied*, 536 U.S. 904 (2003).

and argument had concluded, de la O died. Because Vasquez had not filed an appeal, the absence of a living plaintiff rendered the case moot, and it was dismissed.

In 2002, de la O's widow, Rosalina de la O, and Maria Christina Rivera brought the current suit challenging HACEP's trespass and distribution rules. On HACEP's motion for summary judgment, the district court concluded that (1) no genuine issue of material fact remained for trial, (2) the HACEP facilities constitute non-public fora, (3) the rules were viewpoint neutral, and (4) the rules were reasonable. As a consequence, the court held that the rules did not violate the First Amendment and dismissed the plaintiffs' claims.

After this appeal was filed, HACEP voluntarily amended the rules, which now allow for non-residents to enter facilities to engage in political and religious activities door-to-door. The trespassing regulation now contains a section entitled "Political and Religious Activities," which explicitly allows any person to enter a HACEP development to engage in political campaigning and/or religious proselytizing. To take advantage of this new policy, a non-resident must provide advance notice to the development's management. Additionally, the policy no longer requires management's approval of a copy of a flyer in advance of its distribution. One must still give advance notice that he will be distributing literature.

At this court's request, the parties submitted supplemental briefing on the question whether these amendments render the case moot. HACEP contends the case is moot, and plaintiffs argue that their claims survive the amendments.

## II.

The federal courts are empowered by Article III to hear "cases and controversies." U.S. CONST. art. III, § 2. Accordingly, an actual, live controversy must remain "at all stages of federal court proceedings, both at the trial and appellate levels."[3] That is, "[t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'"[4] Therefore, a request for injunctive relief remains live only so long as there is some present harm left to enjoin. HACEP contends that its amendment to the regulations renders de la O's claims moot.

## A.

This logic is valid only insofar as it pertains to the claims for injunctive relief. It is well-established that "[c]laims for damages or other monetary relief automatically avoid mootness," so long as the underlying claim remains valid on its merits.[5] If, on the other hand, the defendants were immune from a damages award, it would be unnecessary for us to consider the constitutionality of the un-amended regulations.[6] Although such a result would allow us

---

[3] ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 2.5.1, at 125 (4th ed. 2003).

[4] *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 397 (1980) (quoting Henry Monaghan, *Constitutional Adjudication: The Who and When*, 82 YALE L.J. 1363, 1384 (1973)).

[5] 13A CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2D § 3533.3, at text accompanying n.2.

[6] *See Chase v. McMasters,* 573 F.2d 1011, 1015 (8th Cir. 1978) (dismissing an otherwise viable claim for damages on immunity grounds).

3

to avoid a constitutional question,[7] HACEP, the sole defendant, is an entity comprised wholly of members appointed by the mayor of El Paso. As an arm of local government, not an instrument of the state, it is not entitled to sovereign immunity under the Eleventh Amendment.[8] The doctrine of qualified immunity, furthermore, is applicable only to government officials, not municipal entities.[9] The pleading of a colorable claim for damages thus precludes a finding of mootness.

### B.

The existence of the claim for damages, however, does not end our inquiry. That is, although we must consider the constitutionality of the rules (pre-amendment) for purposes of the damages claim, the plaintiffs continue to press their claim for injunctive relief against the amended rules. Neither side's brief addresses the problem of our court's reviewing, in the first instance, the constitutionality of regulations that, in their current form, have not been evaluated by the district court.

One possible option for dealing with this dilemma would be to remand for the district court to have the first opportunity to consider the constitutionality of the amended regulations. Such an approach would be consistent with our policy that the court of appeals will not normally consider evidence or arguments not presented to the district court.[10]

On the other hand, remanding the case potentially creates further difficulties. For example, if we were to remand and the district court proceeded again to uphold the regulations as valid, HACEP could again amend its regulations while an appeal was pending. Such a circumstance necessarily would deprive the plaintiffs of any possibility of appellate review. Similar concerns have motivated the courts to recognize an exception to the mootness doctrine where a challenged behavior is voluntarily ceased by the defendant but the defendant is capable of resuming the practice at any time. *See*, *e.g.*, *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953).

Furthermore, were we to remand, the outcome in the district court is certain. Although the current regulations differ from those at issue before the district court, the new regulations are *less* restrictive than their predecessors. Given that the district court deemed the prior rules constitutionally permissible, that court presumably would find that the amended rules also pass constitutional muster. Under such circumstances, the decision to remand, aside from allowing for the evasion-of-review situation set forth above, would be inefficient. Consequently, the constitutionality of both sets of regulations is properly before us.

### III.

De la O contends that the district court im-

---

[7] *See Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 346-47 (1936) (Brandeis, J., concurring) (describing the doctrine of constitutional avoidance).

[8] *See Bd. of Trustees v. Garrett,* 531 U.S. 356, 368-69 (2001).

[9] S*ee Owen v. City of Independence, Mo.*, 445 U.S. 622, 653 n.37 (1980) ("[T]he justifications for immunizing officials from personal liability have little force when suit is brought against the governmental entity itself.").

[10] *See Nisso-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988) ("[O]ur review is confined to an examination of materials before the lower court at the time the ruling was made; subsequent materials are irrelevant.").

properly disposed of the case on summary judgment despite the existence of issues of material fact. We review a summary judgment *de novo*. *Harris v. Rhodes*, 94 F.3d 196, 197 (5th Cir. 1996). Where, as here, we are considering a First Amendment challenge to a government regulation of speech in a non-public forum, the relevant question is whether the regulation is viewpoint-neutral and reasonable in light of the forum's purpose.[11] Therefore, summary judgments are appropriate only where there is no factual issue relating to the neutrality of a regulation (on its face or as applied) or with respect to the government's proffered support for the restriction's reasonableness.

The district court found that the restrictions are content- and viewpoint-neutral, facially and as applied. In its opinion granting summary judgment, the district court noted,

> Plaintiffs have not presented one scintilla of evidence that suggests that any political candidates were denied access to HACEP's complexes because HACEP disagreed with a particular political message. Moreover, Plaintiffs have not presented any evidence to suggest Rules D.2 and D.5 were enacted, or are being applied, to censor those messages with which HACEP disagrees.

*De la O*, No. 02-CV-456, at 9. Although, in their supplemental brief on the mootness question, the plaintiffs reference their "challenge . . . as to application by selective enforcement," they point to little evidence in the record that could serve as the basis for disturbing the

court's above-stated conclusion of content-neutrality.

With respect to the facts underlying the court's reasonableness conclusion, on the other hand, de la O asserts that affidavits in the record contradict the evidence proffered by HACEP, and accepted by the district court, in support of the reasonableness of the restrictions. Specifically, in holding that the rules were reasonable, the district court relied on the affidavit testimony of Ned Beman, HACEP's Director of Housing Management, who stated that the proffered purpose of the challenged rules is

> the protection and safety of HACEP's tenants, many of which are elderly residents and are frightened by door-to-door solicitors due to the fact that the majority of those arrested on HACEP property are non-residents engaged in narcotics distribution. Additionally, Beman's uncontradicted testimony reveals that the [INS] operates a surveillance station in at least one of its complexes, the Sun Plaza, because of the large number of undocumented aliens who pass through that complex.

*Id.* at 3.

Attempting to demonstrate that Beman's assertions are in fact in controversy, plaintiffs point to the affidavit of David Marquez, the former head of security at HACEP. In the first place, de la O makes no attempt to suggest which elements of Marquez's affidavit specifically raise factual issues. We review summary judgments *de novo*, using the same standard as that employed by the district court. Namely, once the moving party has demonstrated that the non-moving party has no evidence such that a reasonable jury could support a verdict in its favor, the non-moving party must put

---

[11] Both our conclusion that the relevant forum is non-public in nature, and the relevant constitutional inquiry, will be discussed in much greater detail in part IV, *infra*.

forth *specific facts* that demonstrate a genuine factual issue for trial. *Brennan v. Mercedes Benz*, 388 F.3d 133, 135 (5th Cir. 2004).

That is, once HACEP satisfied its burden by proffering Beman's testimony, the burden shifted to de la O to demonstrate a remaining factual controversy. The perfunctory and conclusional assertion that a particular affidavit creates such a conflict normally will not suffice. "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

The shortcomings of plaintiffs' briefing aside, however, Marquez's affidavit creates no genuine issues of fact, but instead alleges that Marquez's experience did not indicate that door-to-door solicitation had ever yielded criminal activity. As HACEP ably points out, however, Beman never asserted anything to the contrary.

Rather, Beman asserted that allowing door-to-door solicitation might permit criminals to pose as legitimate visitors. He urged that a purpose of the regulation was to prevent crime. Marquez's observation does not raise a factual issue as to whether that purpose is factually correct. At best, his assertions produce competing factual evidence for the court to weigh in determining, as a matter of law, whether the alleged purposes are served by the regulations, a determination that is necessary to its eventual reasonableness conclusion. No direct factual disputes, however, are raised.

Marquez's other statements that might possibly be construed as raising a genuine issue of fact also fail, because they do not appear to be based on personal knowledge, but rather on speculation. *See* FED. R. CIV. P. 56(e). Statements made on information and belief do not constitute proper summary judgment evidence

under rule 56(e). *Bolen v. Daniel*, 340 F.3d 300, 313 (5th Cir. 2003).

For example, in response to Beman's assertion that elderly residents are fearful of door-to-door solicitors, Marquez stated that Beman's position is "at best an exaggeration." This conclusion is not apparently based on any specific personal knowledge on the part of Marquez, but rather on an unsubstantiated belief. Similarly, Marquez puts forth that it is his "understanding" that the local police chief and sheriff have declared El Paso among the country's safest cities. In addition to being patently not based on personal knowledge, this statement does little to refute Beman's assertions.

In sum, Marquez adds some facts to the record that the district court could easily consider when making its reasonableness conclusion as a matter of law. On the other hand, Marquez's affidavit does not squarely cast into doubt any of Beman's material assertions. To the extent that some aspects of the Marquez affidavit do attempt to refute Beman's positions, those passages do not constitute proper summary judgment evidence. Marquez does nothing to refute the premise that the rules in question are advanced for the purpose of the protection and safety of the HACEP residents. With the exception of the prior-approval provision in Rule D.5, which we address *infra*, the district court therefore did not err by resolving the case on summary judgment.

IV.

As discussed above, the restrictions now in place require that (1) there be no distribution of flyers or notices between 8:00 p.m. and 9:00 a.m.; (2) a tenant wishing to distribute flyers during the permitted hours must give advance notice to the Housing Manager; (3) no flyers may be left on a tenant's door if no one answers; (4) non-residents may enter a

HACEP facility for political and/or religious activities if they provide advance notice to the complex's manager, in writing or by telephone; (5) if a non-resident wishes to enter for religious or political purposes on a weekend, he must be certain to have given notice before the close of business on Friday; and (6) any door-to-door activities by non-residents must be carried out between 9:00 a.m. and 8:00 p.m.

### A.

Although de la O is not claiming that she has been prevented from engaging in any activities, such as political campaigning, the right to receive information is as equally protected as is the right to convey it. *See Martin v. City of Struthers*, 319 U.S. 141, 143 (1943) (striking down ordinance prohibiting door-to-door distribution of handbills). Where regulations restricting speech touch only activities to be carried out on government property, however, we review their validity under a framework different from the one we would use if the restriction swept more broadly.

"The existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." *Perry Educ. Ass'n v. Perry Local Educators Ass'n*, 460 U.S. 37, 44 (1983). There are three distinct categories of government property.

The first category, traditional public fora, consists of those locations that "by long tradition or by government fiat have been devoted to assembly and debate." *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985). Traditional public fora include public streets and parks, "which 'have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating

thoughts between citizens, and discussing public questions.'" *Perry*, 460 U.S. at 44 (quoting *Hague v. CIO*, 307 U.S. 496, 515 (1939)).

The next category encompasses those areas that, although not traditionally places reserved for public expression, have been opened by the state for expressive activity. These designated public fora can include university meeting halls and municipal theaters. *See Widmar v. Vincent*, 454 U.S. 263, 277 (1981); *Southeastern Prods., Ltd. v. Conrad*, 420 U.S. 546, 555 (1975). The remaining public property is classified as non-public fora, a sweeping category that includes a wide range of places such as jails, military bases, and interstate highway rest stops.[12]

Although restrictions on speech in public fora and designated public fora are closely scrutinized and are valid only if content-neutral and necessary to serve a compelling government interest, restrictions on the use of non-public fora are reviewed with far greater deference to policymakers. *Perry*, 460 U.S. at 46. In such fora, the state may enforce time, place, and manner restrictions and regulations intended to reserve the forum for its intended purpose "as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Id.*

Because HACEP complexes are government-owned property, analysis of the validity of HACEP's restrictions on First Amendment

---

[12] *See Adderley v. Florida*, 385 U.S. 39, 47-48 (1966); *M.N.C., Inc. v. United States Dep't of Defense*, 791 F.2d 1466, 1473 (11th Cir. 1986); *Sentinel Communications Co. v. Watts*, 936 F.2d 1189, 1204 (11th Cir. 1991).

activity requires us first to determine the type of forum these complexes constitute. Public housing facilities such as those which HACEP operates have repeatedly been held to constitute non-public fora.[13]

It is beyond dispute that the primary purpose for the very existence of HACEP's facilities is to provide affordable housing to those in El Paso needing financial assistance. Certainly, the complexes are used for social interaction, but HACEP was not created to facilitate the expression of ideas or serve as a meeting place for citizens. Other than making a cursory assertion that this case is distinguishable from *Daniel*, 38 F.3d at 550 (holding that housing projects are non-public fora), plaintiffs make no real attempt to explain how the complexes could be considered even designated public fora.[14] It seems obvious, therefore, that for purposes of our further analysis, HACEP's facilities are non-public fora.

B.

Even in non-public fora, the state may restrict speech only in such a manner as is reasonable and viewpoint-neutral. *See Perry*, 460

---

U.S. at 46. There is no evidence in the record even suggesting that HACEP has discriminated among speech on the basis of the viewpoint of the speaker, either on the face of the rules or in the manner in which they have been applied. Because the regulations are therefore viewpoint- neutral, they survive scrutiny so long as they are "reasonable in light of the purpose served by the forum." *Good News Club v. Millford Cent. Sch.*, 533 U.S. 98, 107 (2001).

It is difficult to see how, in light of the recent amendments, de la O can claim that the rules are unreasonable. A local government's proffered interestSScrime preventionSSis obviously a weighty one.[15] Furthermore, Beman's affidavit speaking to the presence of an INS surveillance operation onsite at one of the complexes demonstrates that an additional purpose of the trespassing regulation is to limit use of the complexes as havens for undocumented aliens.[16]

When examining the reasonableness of restrictions on speech, the existence of alternative channels of communication is integral.[17] Obviously a number of alternative channels exist here. Though one cannot, under the amended regulations, distribute flyers between 8:00 p.m. and 9:00 a.m., the vast majority of most residents' waking hours are within the

---

[13] *See Daniel v. City of Tampa, Fla.*, 38 F.3d 546, 550 (11th Cir. 1994); *Crowder v. Housing Auth.,* 990 F.2d 586, 591 (11th Cir. 1993) (delineating library of housing project as non-public forum); *Daily v. New York City Housing Auth.,* 221 F. Supp.2d 390, 399 (S.D.N.Y. 2002) (holding that community center at housing project was non-public forum by default and a designated public forum "at times other than during the regularly scheduled educational activities"); *see also Vasquez*, 271 F.3d at 202 (holding that the HACEP facilities are non-public fora).

[14] Indeed, at oral argument, appellants' counsel seemed to concede that the complexes at issue are non-public fora.

[15] *See*, *e.g., City of Renton v. Playtime Theaters, Inc.*, 475 U.S. 41, 47 (1986) (upholding zoning restrictions on nude dancing where restriction was designed to curtail crime).

[16] *See INS v. Delgado*, 466 U.S. 210, 223 (1984) (describing government's interest in enforcing immigration laws as "enormous").

[17] *See Vasquez,* 271 F.3d at 208 (Barksdale, J., dissenting).

times when such distribution is permitted.

Further, it is true that non-residents seeking to engage in political activities, spontaneously, on a weekend would be unable to do so. Nevertheless, spontaneous activity during weekday business hours (when advance notice could be given to the housing manager) is permissible.

Additionally, it is not that weekend activities are prohibited; rather, non-residents must only have the foresight to notify management, by the close of business on Friday, of their intention to go door-to-door over the weekend. Although this undoubtedly constitutes a burden, it can hardly be dubbed a constitutionally unreasonable one in light of the alternatives presented to potential speakers.

In *Daniel*, 38 F.3d at 550, the court considered a trespass statute that was nearly identical to the restrictions used by HACEP *before* the recent amendments and concluded that the trespass statute was perfectly constitutional, partly in light of the alternative means of communication left open to speakers. That is, even if denied access to the entire complex, speakers would have access to adjacent streets and sidewalks to disseminate their messages. Under the amended regulations, the burdens on potential speakers are significantly lessened and are constitutionally permissible.

The plaintiffs' brief does not distinguish between arguments focused on the regulations pre-amendment and those attacking the current regulations. Regardless of which set of regulations are being attacked, the plaintiffs make two, ultimately unavailing, arguments that nevertheless warrant brief discussion.

First, de la O places great emphasis on *Watchtower Bible & Tract Society v. Village of Stratton*, 536 U.S. 150 (2002), in which the Court struck down a municipal ordinance that required the requisition of a permit before an individual could engage in door-to-door activities. Inasmuch as the ordinance applied to religious proselytizing, anonymous political speech, and the distribution of handbills, rather than commercial solicitation, the Court held that its restrictions were invalid. *Id.* at 165.

As much as de la O wishes to liken her case to *Watchtower*, it is inapposite. The ordinance at stake in *Watchtower* applied to the entire municipality and was not limited to non-public fora such as the HACEP facilities. Tellingly, the Court did not even discuss forum analysis in its opinion. Consequently, it is obvious that *Watchtower* was decided under an entirely different rubric and is not controlling here.

Secondly, de la O argues that the HACEP regulations must be struck down because of their alleged overbreadth. It seems that de la O misconstrues the nature and function of the overbreadth doctrine. According to de la O,

[T]he regulations sweep broadly, covering unpopular causes unrelated to commercial transactions or to any special interest in protecting the residents. Secondly, requiring a permit as a prior condition on the exercise of the right to speak imposes here a burden on the speech of citizens holding religious or patriotic views. Third, there is a significant amount of spontaneous speech that is effectively banned by the regulations. Even a spontaneous decision to go across the street, with a flyer, and urge a neighbor to vote against the mayor who appoints the HACEP board, could not lawfully be implemented without first obtaining permission from those who work for the board that is appointed by the Mayor. This kind of restrictions and inhibitions [sic] cannot with-

stand constitutional muster and must fail.

Although the above-quoted excerpt might serve as a persuasive argument for the unreasonableness of the statute under the applicable rubric of forum analysis, it has little to do with the doctrine of overbreadth. "[O]verbreadth challenges call for relaxing familiar requirements of standing, to allow a determination that the law would be unconstitutionally applied to different parties and different circumstances from those at hand." *Sabri v. United States*, 541 U.S. 600, 609 (2004). For example, in *Virginia v. Hicks*, 539 U.S. 113, 118 (2003), the defendant sought to avoid conviction by invoking the overbreadth doctrine and challenging the constitutionality of a Virginia trespass statute.

> Hicks [did] not contend that he was engaged in constitutionally protected conduct when arrested; nor [did] he challenge the validity of the trespass statute under which he was convicted. Instead he claim[ed] that the RRHA policy barring him from Whitcomb Court [was] overbroad under the First Amendment, and cannot be applied to himSSor anyone else.

*Id.*

In this case, therefore, overbreadth analysis might be helpful to de la O were she, say, a trespasser who was arrested pursuant to the HACEP regulations and yet was not on HACEP property to engage in First Amendment-protected conduct, but instead was present merely to loiter. In such a circumstance, normal standing requirements would preclude her from challenging the constitutionality of the regulations. Invoking overbreadth, however, would enable her to benefit from the same First Amendment arguments available to those who are legitimately burdened by alleg-

edly unconstitutional restrictions.

In reality, however, de la O already has such standing. Her claim is predicated on her own supposed injury resulting from the alleged unconstitutionality of the HACEP regulationsSSthat is, she is unable, for example, to receive unsolicited flyers and notices from non-residents who have not given advance notice to housing management. The overbreadth argument, therefore, is inapplicable to de la O's case. The new regulations do not run afoul of the First Amendment, and the plaintiffs are not entitled to injunctive relief.

V.

Even though HACEP has voluntarily amended the challenged regulations, de la O's complaint seeks not only injunctive relief, but also damages. Consequently, as discussed above, HACEP's voluntary amendment of the rules does not render moot the plaintiffs' objections to the prior regulations, so we must consider, in addition to the constitutionality of the amended regulations, the propriety of the regulations as they existed at the time of the district court's decision.

The changes in the regulations certainly have no effect on the nature of the forum in question. That is, HACEP facilities have been non-public fora both before and after the amendments to the regulations. Similarly, there is no indication in the record that the previous regulations were anything but completely neutral as to content and viewpoint, both on their face and as applied. The relevant inquiry, therefore, goes to the "reasonableness" of those regulations with reference to the purpose of the forum. *See Good News Club*, 533 U.S. at 107.

Before their amendment, the regulations restricted access to the HACEP complexes by

uninvited non-residents to those "persons who have legitimate business on the premises, e.g., law enforcement and other governmental personnel, utility service workers, HACEP contractors, and others as authorized by HACEP." All others found on the property would receive a trespass warning and would be forced to leave or face arrest. Before the amendments, this regulation had no provision excepting those wishing to enter the property to engage in political campaigning or religious proselytizing. Additionally, residents wishing to distribute notices or flyers, door-to-door, were forced to submit a copy, to management, of the literature to be distributed and to receive prior approval.

Considering the constitutionality of the former regulations, in *Vasquez*, 271 F.3d at 206, the panel majority concluded that the pre-amendment regulations were "an unreasonable restriction on the freedoms guaranteed by the First Amendment." In reaching its decision, the panel relied heavily on the importance of door-to-door campaigning in our democratic system. Because HACEP residents "generally conduct themselves like individuals in any other neighborhood in El Paso . . . the citizens who reside in the HACEP developments deserve access to political information in the same manner as other citizens of El Paso." *Id.* at 204.

In response, Judge Barksdale dissented, emphasizing that the purpose of the HACEP facilities is to provide housing, not a "meeting place for the exchange of ideas." *Id.* at 208. Additionally, the fact that there are a multitude of alternative channels of communication, such as the streets and sidewalks surrounding HACEP complexes, provides further evidence of the reasonableness of the restrictions.

Despite an otherwise exhaustive analysis of

the issue, the exchange between the majority and the dissent in *Vasquez* omitted a key aspect of the issue. Rule D.5, before amendment, required that "[i]f a resident desires to distribute notices or flyers in his development, the resident must obtain advance approval of the Development's Housing Manager and provide the Housing Manager with a copy of the proposed notice or flyer." De la O argues now on appeal that "[t]he Court has held that a requirement that one must register before he undertakes to make a speech to enlist support for a lawful movement is quite incompatible with the requirements of the First Amendment." *See Thomas v. Collins*, 323 U.S. 516, 539-40 (1945). The Supreme Court has repeatedly reaffirmed that prior registration requirements are troubling in the free speech context.[18]

The district court, in its otherwise comprehensive and persuasive order, gave scant attention to the specific advance-approval requirement of Rule D.5. The court did, however, make the blanket statement (which we have previously noted) that "Plaintiffs have not presented any evidence to suggest Rules D.2 and D.5 were enacted, or are being applied, to censor those messages with which HACEP disagrees."

That statement is somewhat called into question by summary judgment evidence from an affiant named Valverde, alleging that she had a falling out with HACEP management and certain fellow residents regarding her presidency of the residents' association, stating that "I as a courtesy advised Linda Pena,

---

[18] *See Watchtower*, 536 U.S. at 164; *Hynes v. Mayor & Council*, 425 U.S. 610, 629 n.4 (1976); *Eisenstadt v. Baird*, 405 U.S. 438, 455 (1972) (Douglas, J., concurring).

Assistant Project Manager that I was going to leaflet the flyer herein contained as Exhibit 'B.' I did so in order to in order [*sic*] defend my name. Later that day I was instructed by Linda Pena, to stop leafleting. She said that the order came from Bernie Rodriguez, Project Manager."

It is undeniable that the Constitution forbids the use of a leafleting policy to quell certain points of view. It is therefore necessary to vacate and remand, but only as to the former version of Rule D.5, so the district court can determine whether it was used to discriminate on the basis of viewpoint, and if so, whether there was compensable injury. It may be that, given the remainder of our determinations regarding the past and present rules, the plaintiffs will no longer find it advisable to pursue this very small portion of the case, but that is for the district court and parties to resolve.

## VI.

In summary, despite HACEP's voluntary decision to amend the challenged regulations, a live controversy remains. With the exception of the former Rule D.5 regarding prior approval, the present and past regulations pass constitutional muster because the housing facilities are public fora.

The HACEP facilities are non-public fora and, thus, restrictions on speech within their confines are valid so long as they are viewpoint-neutral and reasonable in light of the purpose of the forum. The amended regulations dispense with most of the problems to which the *Vasquez* majority pointed. Under the deferential "reasonableness" standard, they are constitutional. The prior regulations present a closer question but, in light of the overriding need to provide safe housing, they are constitutional with the exception noted above. The judgment is AFFIRMED, except that the portion of the judgment that blesses the former Rule D.5 is VACATED and REMANDED for any further proceedings that may be needed.

12