Roy **ECKHARDT**, et al., Plaintiffs,

v.

**QUALITEST PHARMACEUTICALS INC.**, et al., Defendants.

Civil Action No. M–11–235.

United States District Court, S.D. Texas, McAllen Division.

Aug. 9, 2012.

Order Denying Motion to Amend Jan. 8, 2013.

Daniel McGlynn, Terrence Joseph Donahue, McGlynn Glisson Mouton, Baton Rouge, LA, William B. Curtis, Curtis Law Group, Dallas, TX, John Timblin Flood, Flood & Flood, Corpus Christi, TX, for Plaintiffs.

Marjory Colvin Batsell, Attorney at Law, Brownsville, TX, Michael R. Klatt, Attorney at Law, Austin, TX, Charles Stephen Kelley, Mayer Brown LLP, Houston, TX, Henninger S. Bullock, Mayer Brown LLP, New Yorkny Pro Hac Vice, Mark S. Cheffo, Skadden, Arps, Slate, Meagher & Flom LLP, Andrew J. Calica, Mayer Brown LLP, New York, NY, for Defendants.

### MEMORANDUM OPINION

MICAELA ALVAREZ, District Judge.

Pending before the Court is a motion for summary judgment[1] which was filed by name-brand manufacturers, Wyeth, Inc. and Schwarz Pharma, Inc. (collectively

---

1. Dkt. No. 69.

"Brands"). After considering the motion, response, record, and relevant authorities, the Court **GRANTS** Brands' motion for summary judgment in its entirety.

## I. Background

Plaintiffs Roy Eckhardt and Yolanda C. Eckhardt filed their first complaint on April 13, 2011.[2] On June 29, 2011, they filed an amended complaint.[3] Plaintiffs filed their *second amended complaint* on August 26, 2011.[4] In the second amended complaint, Plaintiffs allege that Roy Eckhardt ("Eckhardt") developed a neurological disorder known as tardive dyskinesia in early 2008.[5] Plaintiffs allege that Eckhardt's condition was caused by Reglan/metoclopramide which Eckhardt ingested after his doctor began prescribing it to him in 2007 to treat his gastrointestinal problems (the complaint also alludes to other prescriptions at unspecified times).[6] Plaintiffs sued both name-brand manufacturers of metoclopramide (Reglan) and generic manufacturers of metoclopramide.[7] The thirty-three page complaint advances several theories of recovery ranging from negligence to fraud.[8] The Court previously granted the generic manufacturers' motion to dismiss.[9]

On December 17, 2011, Plaintiffs stipulated on the record that Brands did not manufacture, distribute or sell the Reglan/metoclopramide which Roy Eckhardt ingested.[10] On February 3, 2012, Brands filed a motion for summary judgment.[11] On February 24, 2012, Plaintiffs filed a response.[12]

## II. Preliminary Matter

■ The Court notes at the outset that it is disappointed with the quality of the briefing from both sides. For example, although this case requires the Court to predict whether the Texas Supreme Court would find that the Brands are liable to Plaintiffs, Brands dedicate a significant portion of their briefing to cases that have no nexus with Texas law. Additionally, although the Court's determination of certain legal issues in this case renders the majority of the summary judgment evidence immaterial, the Court notes that Plaintiffs do an exceedingly poor job of citing to the record. For instance, Plaintiffs' response contains a section labeled "Misrepresentations by Wyeth" and merely cites to two several-hundred-page depositions for authority.[13] Vague references to an extensive summary judgment record are insufficient to raise genuine issues of material fact that would preclude summary judgment. The Court reminds Plaintiffs that "[j]udges are not like pigs, hunting for truffles buried in briefs."[14] While the Court is aware that the attorneys for both sides are undoubtedly involved in similar litigation throughout the country, the

---

2. Dkt. No. 1.

3. Dkt. No. 10.

4. Dkt. No. 22.

5. *Id.* at ¶ 3.48.

6. *Id.* at ¶¶ 3.15, 3.48–3.50.

7. *Id.* at ¶¶ 1.06–1.07; 3.02–3.03, 3.10.

8. *Id.*

9. Dkt. No. 75.

10. Dkt. No. 66.

11. Dkt. No. 69.

12. Dkt. No. 71.

13. Dkt. No. 71 at pp. 10–12; Dkt. No. 71 Attachs. 5 & 6.

14. *de la O v. Hous. Auth. of City of El Paso, Tex.*, 417 F.3d 495, 501 (5th Cir.2005) (citing

Court reminds counsel that they have ethical obligations to their clients to give each case individualized attention.

## III. Analysis

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." [15] "Where federal jurisdiction is based on diversity of citizenship, as it is here, a federal court looks to the substantive law of the forum state." [16]

In their motion for summary judgment, Brands argue that this is a products liability case and that Texas law does not allow Plaintiffs to recover from Brands for injuries allegedly caused by Roy Eckhardt's ingestion of generic metoclopramide.[17] Plaintiffs respond that the claims asserted against Brands are not products liability claims and that they may recover from Brands under theories of negligence, misrepresentation and fraud.[18] The Court will now consider whether Brands are entitled to summary judgment.

### A. Brands are Not Liable Under Products Liability Law

Here, this case was initially presented as a products liability case. Therefore, the Court begins its analysis pursuant to Texas products liability law. In Texas, the term "products liability action" is statutorily defined:

> "Products liability action" means any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories.[19]

After reviewing Texas law, the Court is convinced that Brands may not be held liable here based on a theory of products liability for two primary reasons.

■ First, Brands may not be held liable based on the text of the products liability statute. The Texas Supreme Court has recently determined that under the products liability chapter entities are only " 'manufacturers' ... with respect to their own products." [20] Here, Plaintiffs have stipulated that Brands did not manufacture, distribute or sell the Reglan/metoclopramide ingested by Roy Eckhardt.[21] Thus, Brands fall outside the scope of liability for a statutory "products liability action."

■ Second, Brands may not be held liable based on Texas case law. Because there is no opinion from the Texas Supreme Court that addresses the exact issue in this case,[22] this Court "must make

---

*United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991)).

15. Fᴇᴅ.R.Cɪᴠ.P. 56(a).

16. *Colony Ins. Co. v. Peachtree Constr., Ltd.,* 647 F.3d 248, 252 (5th Cir.2011) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Tex. Indus., Inc. v. Factory Mut. Ins. Co.,* 486 F.3d 844, 846 (5th Cir.2007)).

17. Dkt. No. 69 at pp. 1–4.

18. Dkt. No. 71 at pp. 6, 8–9.

19. Tex. Civ. Prac. & Rem.Code Ann. § 82.001(2) (West Supp.2011).

20. *Owens & Minor, Inc. v. Ansell Healthcare Prods., Inc.,* 251 S.W.3d 481, 485 (Tex.2008).

21. Dkt. No. 66. (Although the stipulation refers to "Wyeth LLC" instead of "Wyeth, Inc.," the record reveals that Wyeth LLC was formerly known as Wyeth, Inc. *See* Dkt. No. 34. Therefore, the Court interprets the stipulation as applying to both Wyeth LLC and Wyeth, Inc.).

22. *See Finnicum v. Wyeth, Inc.,* 708 F.Supp.2d 616, 619–620 (E.D.Tex.2010).

an 'Erie guess' as to how the Texas Supreme Court would apply state law." [23]

Plaintiffs direct the Court to *Alm v. Aluminum Co. of America.* [24] In *Alm,* the plaintiff was injured by a bottle cap that exploded off a bottle of 7–Up and sued Alcoa. [25] In that case, "Alcoa designed and marketed the bottle closure process. Alcoa designed the bottle cap. Alcoa designed, manufactured, and sold the bottle capping machine." [26] Thus, it is readily apparent to the Court that Alcoa's connection to the injury in *Alm* was much more extensive and direct than Brands' alleged connection to the injury in this case.

Brands direct the Court to *Firestone Steel Products Company v. Barajas.* [27] In *Firestone,* Firestone Steel Products Company ("Firestone") was sued by the survivors of a man who was killed when a tire manufactured by Kelsey–Hayes Company exploded. [28] Kelsey–Hayes had incorporated a patented Firestone design into its own significantly different design. [29] The Texas Supreme Court stated that "[a] manufacturer generally does not have a duty to warn or instruct about another manufacturer's products, even though a third party might use those products in connection with the manufacturer's own product." [30] Furthermore, the Texas Supreme Court stated, "[u]nder traditional products liability law, the plaintiff must prove the defendant supplied the product that caused the injury. It is not enough that the seller merely introduced products of similar design and manufacture into the stream of commerce." [31] Ultimately, the Supreme Court found that Firestone was not liable to the plaintiffs. [32]

In considering *Alm* and *Firestone,* it is important to recognize that they dealt with events that occurred prior to the adoption of a statutory definition for "products liability." Nevertheless, the Court considers them to be persuasive authority. Ultimately, the Court finds that *Firestone* is more analogous to facts in this case than *Alm.* Based on *Firestone,* the Court finds that the Texas Supreme Court would not hold Brands liable in products liability for injuries allegedly suffered by Roy Eckhardt when he ingested metoclopramide produced by generic manufacturers. Several other federal district Courts in Texas have reached similar conclusions. [33]

Therefore, based on the products liability statute and relevant case law, it is clear

**23.** *Id.* at 619 (citing *Beavers v. Metro. Life Ins. Co.,* 566 F.3d 436, 439 (5th Cir.2009)).

**24.** 717 S.W.2d 588 (Tex.1986).

**25.** *Id.* at 590.

**26.** *Firestone Steel Prods. Co. v. Barajas,* 927 S.W.2d 608, 616 (Tex.1996) (citing *Alm,* 717 S.W.2d at 590).

**27.** *Id.*

**28.** *Id.* at 611–13.

**29.** *Id.* at 611.

**30.** *Id.* at 614 (citation omitted).

**31.** *Id.* (citations omitted).

**32.** *Id.* at 617.

**33.** See *Finnicum v. Wyeth, Inc.,* 708 F.Supp.2d 616, 621–22 (E.D.Tex.2010); *Hardy v. Wyeth, Inc.,* No. 9:09CV152, 2010 WL 1049588, at *4–5 (E.D.Tex. Mar. 8, 2010) *adopted by,* 2010 WL 1222183, at *1 (E.D.Tex. Mar. 29, 2010); *Burke v. Wyeth, Inc.,* No. G–09–82, 2009 WL 3698480, at *1–3 (S.D.Tex. Oct. 29, 2009); *Cousins v. Wyeth Pharm., Inc.,* No. 3:08–CV–0310–N, 2009 WL 648703, at *2 (N.D.Tex. Mar. 10, 2009); *Pustejovsky v. Wyeth, Inc.,* No. 4:07–CV–103–Y, 2008 WL 1314902, at *1–2 (N.D.Tex. Apr. 3, 2008) *aff'd on other grounds,* 623 F.3d 271 (5th Cir.2010); *Block v. Wyeth, Inc.,* No. 3:02–cv–1077, 2003 WL 203067, at *1–3 (N.D.Tex. Jan. 28, 2003); *but see, Easter v. Aventis Pasteur, Inc.,* No. 5:03–CV–141, 2004 WL 3104610, at *8–10 (E.D.Tex. Feb. 11, 2004).

that Plaintiffs may not recover from Brands based on a products liability theory. The Court **GRANTS** summary judgment for Brands on all of Plaintiffs' products liability claims.

## B. All Claims Stated in the Second Amended Complaint Sound in Products Liability

■ Brands and Plaintiffs disagree whether this is a products liability case. Brands assert that "[t]his is a product-liability case."[34] Plaintiffs state in their response that "the claims asserted by Plaintiff[s] are not products liability claims."[35] But, Plaintiffs' current position is directly contradicted by Plaintiffs' prior assertion that "[t]his is a product liability case."[36] In the Court's order dismissing the claims against the generic manufacturers, the Court stated that "despite the multiple claims asserted by Plaintiffs, this is essentially a products liability case."[37] The Court stands by its original assessment.

Plaintiffs assert in their response that their "claims with regard to Brand Defendants do not relate to the composition or manufacture of the metoclopramide he ingested, but rather focus on the false and misleading representations, the inaccurate and insufficient information promulgated by Brand Defendants."[38] Plaintiffs urge the Court to "apply fundamental law regarding negligence, fraud and misrepresentations."[39] But, Plaintiffs have failed

to convince the Court that this is not a products liability action. As explained below, the Court finds that Plaintiffs have not stated claims for fraud and certain species of misrepresentation. But even assuming that Plaintiffs have stated claims for negligence, fraud and misrepresentation, those claims fall squarely within the statutory definition of a products liability action. Again, a products liability action includes "any action against a manufacturer or seller for recovery of damages arising out of personal injury ... allegedly caused by a defective product whether the action is based in ... strict products liability, negligence, misrepresentation ... or any other theory or combination of theories."[40] To be clear, all claims asserted by Plaintiffs are products liability claims, and the Court **GRANTS** summary judgment for Brands on the products liability claims.

## C. Brands are not Liable Under Any Other Pleaded Theories

The Court is satisfied that the above products liability analysis entitles Brands to summary judgment on all claims against them. Nonetheless, and in the alternative, the Court will briefly address why recovery on the other theories raised in the second amended complaint is precluded. Before addressing those claims, the Court notes that Plaintiffs are advancing theories in their response that are not supported by the second amended complaint. The Court interprets those portions of the response as a motion for leave to amend the

---

34. Dkt. No. 69 at p. 1.

35. Dkt. No. 71 at p. 5.

36. Dkt. No. 20.

37. Dkt. No. 75 at p. 6.

38. Dkt. No. 71 at p. 5; *see also* Dkt. No. 66 ("Plaintiffs' causes of action against Wyeth and Schwarz are not based upon a claim that

they manufactured, distributed or sold any name brand Reglan® or generic metoclopramide ingested by Plaintiff Roy Eckhardt, but rather are based upon fraud and misrepresentation theories regarding the content of the drug labeling.").

39. Dkt. No. 71 at p. 6.

40. Tex. Civ. Prac. & Rem.Code Ann. § 82.001(2) (West Supp.2011).

complaint. However, the Court previously denied leave to amend the complaint.[41] At this summary judgment stage, the reasons for denying leave to amend the complaint have only increased;[42] the Court denies leave to amend the second amended complaint.

Although the complaint does a poor job of segregating the allegations against the various defendants in this case, in their response to Brands' motion for summary judgment, Plaintiffs have subsequently narrowed the theories upon which they are attempting to recover from Brands. For example, Plaintiffs state:

> Plaintiffs' causes of action against ·[Brands] are not based upon a claim that they manufactured, distributed or sold any name brand Reglan® or generic metoclopramide ingested by Plaintiff Roy Eckhardt, but rather based upon fraud and misrepresentation theories regarding the content of the drug labeling.[43]

> Plaintiff[s] allege[ ] harm caused by Brand Defendants' negligence and fraud in spreading information which they knew or should have know was false regarding the effects of metoclopramide. This is not a products liability claim. Quite simply, Plaintiff[s'] claims against Brand Defendants do not include or depend on any allegation that they made or sold the product that Plaintiff ingested.[44]

> ... Plaintiff[s] [are] not asking the Court to rewrite Texas products liability law or ignore fundamental legal principles. Instead, the Court is merely asked to apply fundamental law regarding negligence, fraud and misrepresentations made by the Brand Defendants.[45]

Based on these assertions, it is clear that Plaintiffs are not urging theories against Brands beyond negligence, misrepresentation, and fraud. Nevertheless, the Court will briefly address the other theories included in the complaint before turning to the theories of negligence, misrepresentation, and fraud that Plaintiffs contend are distinct from any products liability claims.

### 1. Theories that Plaintiffs Have Ceased to Urge

Although Plaintiffs have apparently abandoned the following theories of recovery, the Court will briefly address them. For essentially the same reasons stated in this Court's order dismissing the claims against the generic manufacturers, Brands are not liable to Plaintiffs on theories of participatory liability or suppression of evidence.[46] To the extent they are not covered by the above products liability analysis, the Court **GRANTS** summary judgment for Brands on those claims.

▮ Here, Plaintiffs have . stipulated that Brands did not manufacture, distribute or sell the Reglan/metoclopramide ingested by Roy Eckhardt.[47] Thus, Plaintiffs cannot recover against Brands based on warranty theories because Brands were not the "sellers" of the metoclopramide ingested by Roy Eckhardt.[48] To the ex-

41. Dkt. No. 75 at p. 9.

42. *See Parish v. Frazier,* 195 F.3d 761, 763–764 (5th Cir.1999).

43. Dkt. No. 66 at ¶ 5.

44. Dkt. No. 71 at p. 8.

45. Dkt. No. 71 at p. 6.

46. Dkt. No. 75 at p. 13.

47. Dkt. No. 66.

48. *See, e.g.,* Tex. Bus. & Com.Code Ann. § 2.313 (West Supp.2011) (express warranty); Tex. Bus. & Com.Code Ann. § 2.315 (West Supp.2011) (implied warranty of fitness for a particular purpose); *Polaris Indus., Inc. v. McDonald,* 119 S.W.3d 331, 336 (Tex.App.-

tent they are not covered by the above products liability analysis, the Court **GRANTS** summary judgment for Brands on the breach of warranty claims.

■ Additionally, Brands are not liable to Plaintiffs based on breach of warranty claims even if those claims are couched as Texas Deceptive Trade Practices–Consumer Protection Act ("DTPA") claims.[49] To the extent there are any remaining DTPA claims that are not covered by the products liability analysis above, or the fraud analysis below, the Court is unaware of, and Plaintiffs have not directed the Court to, any controlling precedent that would support the view that Brands could be held liable under the DTPA for the injuries that Roy Eckhardt allegedly suffered when he consumed generic metoclopramide. Thus, even if Plaintiffs have alleged DTPA claims against Brands that do not sound in products liability, breach of warranty, or fraud, they cannot recover on those DTPA claims. The Court **GRANTS** summary judgment for Brands on any remaining DTPA claims.

### 2. Theories that Plaintiffs Continue to Urge

Turning to the theories of recovery that Plaintiffs urge in their response to Brands' motion for summary judgment, the Court will first address Plaintiffs' fraud allegations. Fraud claims are subject to the heightened pleading standards of Rule 9(b).[50] Rule 9(b) "requires that [a plaintiff] 'state with particularity the circumstances constituting the fraud.' 'Put simply, Rule 9(b) requires the who, what, when, where, and how to be laid out.' "[51] After reviewing Plaintiffs' second amended complaint, the Court finds that Plaintiffs have failed to state a claim of fraud against Brands. "The failure to state a claim usually warrants dismissal under Rule 12(b)(6). However, in many cases, the failure to state a claim is the 'functional equivalent' of the failure to raise a genuine issue of material fact."[52] This is one of those cases. The Court **GRANTS** summary judgment for Brands on the fraud allegations. This leaves the negligence and misrepresentation allegations.

According to Plaintiffs, their claims of misrepresentation and negligence should survive summary judgment. Assuming without deciding that Plaintiffs have stated a species of misrepresentation that is not subject to 9(b)'s heightened pleading requirement (*i.e.* certain types of negligent misrepresentation),[53] the Court will now consider whether Brands may be held liable under theories of negligence or negligent misrepresentation.

■ The elements of a negligence claim are familiar, but they bear repeating: "To establish negligence, *a party must*

Tyler 2003, no pet.) (citation omitted) ("The elements of a cause of action for breach of the implied warranty of merchantability are as follows: 1) the defendant sold or leased a product to the plaintiff; 2) the product was unmerchantable; 3) the plaintiff notified the defendant of the breach; and 4) the plaintiff suffered injury.").

**49.** *Parkway Co. v. Woodruff,* 901 S.W.2d 434, 438 (Tex.1995) (internal citation omitted) ("The DTPA prohibits the breach of an express or implied warranty, but it does not create warranties.").

**50.** FED.R.CIV.P. 9(b).

**51.** *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter,* 607 F.3d 1029, 1032 (5th Cir.2010) (quoting Fed.R.Civ.P. 9(b); *Benchmark Elec., Inc. v. J.M. Huber Corp.,* 343 F.3d 719, 724 (5th Cir.2003)).

**52.** *Whalen v. Carter,* 954 F.2d 1087, 1098 (5th Cir.1992) (citations omitted).

**53.** *Cf. Williams v. WMX Techs., Inc.,* 112 F.3d 175, 177 (5th Cir.1997).

*establish a duty*, a breach of that duty, and damages proximately caused by the breach." [54] Similarly, a negligent misrepresentation claim requires an underlying duty. [55] "A duty represents a legally enforceable obligation to conform to a particular standard of conduct." [56] When a negligence claim is asserted, "[w]hether a duty exists is a threshold inquiry and a question of law; liability cannot be imposed if no duty exists." [57] The same is true when a negligent misrepresentation claim is asserted. Furthermore, "Texas law generally imposes no duty to take action to prevent harm to others absent certain special relationships or circumstances." [58] Sometimes, a defendant owes no duty to a plaintiff. [59] This may be true even when a risk is foreseeable because "foreseeability alone is not sufficient to create a new duty." [60]

■■ Here, the Court must determine whether the Texas Supreme Court would find that Brands owed a duty to Roy Eckhardt that would support a claim for negligence or negligent misrepresentation. Based on the Court's earlier analysis of the Texas Supreme Court's decision in *Firestone*, [61] the Court is unconvinced that a drug manufacturer owes a duty to consumers who are harmed by drugs it did not manufacture, distribute, or sell. In reaching this conclusion, the Court notes its agreement with those courts that have predicted that the Texas Supreme Court would not find that name-brand manufacturers owe a legal duty to the consumers of generic drugs. [62] Because Brands owed no duty to Roy Eckhardt in this case, [63] Plaintiffs cannot prevail on their claims of negligence or negligent misrepresentation against Brands. Therefore, the Court **GRANTS** summary judgment for the Brands on any negligence or negligent misrepresentation claims that are not covered by the Court's products liability analysis.

## IV. Conclusion

After considering the motion, response, record, and relevant authorities, the Court **GRANTS** Brands' motion for summary judgment in its entirety. To be clear, this opinion disposes of all Roy Eckhardt's claims against Brands. Furthermore, because all of Yolanda C. Eckhardt's claims are based on Roy Eckhardt's claims, this opinion disposes of all her claims against Brands. Accordingly, judgment is hereby **GRANTED** in favor of Defendants, Wyeth, Inc. and Schwarz Pharma, Inc., and against Plaintiffs Roy Eckhardt and Yolanda C. Eckhardt.

IT IS SO ORDERED.

**54.** *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex.2006) (emphasis added).

**55.** *See Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex.1991).

**56.** *Way v. Boy Scouts of Am.*, 856 S.W.2d 230, 233 (Tex.App.-Dallas 1993, writ denied) (citation omitted).

**57.** *Kroger*, 197 S.W.3d at 794.

**58.** *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex.2000).

**59.** *Cf. Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404–13 (Tex.2009); *Gen.* *Elec. Co. v. Moritz*, 257 S.W.3d 211, 218 (Tex. 2008).

**60.** *Nabors*, 288 S.W.3d at 411 (citations omitted).

**61.** *See supra* pp. 904–07.

**62.** *See, e.g., Pustejovsky v. Wyeth, Inc.*, No. 4:07–CV–103–Y, 2008 WL 1314902, *2 (N.D.Tex. Apr. 3, 2008) *aff'd on other grounds*, 623 F.3d 271 (5th Cir.2010); *Block v. Wyeth, Inc.*, No. 3:02–cv–1077, 2003 WL 203067, at *1–3 (N.D.Tex. Jan. 28, 2003).

**63.** *Cf. Firestone Steel Prds. Co. v. Barajas*, 927 S.W.2d 608 (Tex.1996).

### ORDER DENYING MOTION TO ALTER OR AMEND JUDGMENT

Pending before the Court is Plaintiffs' Motion to Alter or Amend Judgment. [Dkt. No. 81]. Plaintiffs move this Court, pursuant to Rule 59 of the Federal Rules of Civil Procedure to reconsider its Order granting Defendants Qualitest Pharmaceuticals, Inc. and Vintage Pharmaceuticals, LLC's Motion to Dismiss and its Memorandum Opinion granting Defendants Wyeth, Inc. and Schwarz Pharma, Inc.'s Motion for Summary Judgment. In support of the motion, Plaintiffs assert that the Court's rulings manifest errors of law and fact and that Plaintiffs will suffer substantial harm should the Court adhere to these rulings.

### I PROCEDURAL BACKGROUND

On April 4, 2011 Plaintiffs Roy Eckhardt and Yolanda C. Eckhardt (collectively "Plaintiffs") filed suit against various defendants including Qualitest Pharmaceuticals, Inc.; Vintage Pharmaceuticals, LLC; Wyeth, Inc.; and Schwarz Pharma, Inc. [Dkt. No. 1]. The complaint was amended twice thereafter with the live complaint being that filed on August 26, 2011. [Dkt. No. 22]. On September 30, 2011 Qualitest Pharmaceuticals, Inc. and Vintage Pharmaceuticals, LLC (collectively "Generics") filed a motion to dismiss [Dkt. No. 47] which the Court granted in its entirety on April 30, 2012 [Dkt No. 75]. Wyeth, Inc. and Schwarz Pharma, Inc. (collectively "Brands") filed a motion for summary judgment on February 3, 2012 [Dkt. No. 69] and same was granted in its entirety on August 9, 2012 [Dkt. 79]. Final judgment was entered on August 14, 2012 [Dkt. No. 80]. This motion to alter or amend judgment then followed. Both Generics and Brands have filed a response.

### II DISCUSSION

Plaintiffs bring this motion under Rule 59(e) of the Federal Rules of Civil Procedure as a motion "to alter or amend judgment." A motion served within the twenty-eight days prescribed by Rule 59(e) is evaluated under that Rule; otherwise, a court evaluates the motion under Rule 60(b) as a motion for "relief from judgment." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir.1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n. 14 (5th Cir.1994) (*citing Harcon Barge Co. v. D & G Boat Rentals*, 784 F.2d 665, 669–70 (5th Cir.1986) (en banc)).

■■■ Here, Plaintiffs have filed their motion more than twenty-eight days after the order granting the motion to dismiss Generics but within the twenty-eight days of the entry of the order granting summary judgment and of the final judgment. Generics thus argue that to the extent Plaintiffs seek to alter or amend the judgment dismissing Generics, that portion of Plaintiffs' motion should be evaluated under Rule 60(b). However, the order dismissing Generics was not a final order as it did not dispose of all claims or all parties. While the Court could have entered a final judgment pursuant to Rule 54(b), it did not do so. Accordingly, the Court will consider Rule 59(e) as to both Generics and Brands.

■■■■ A Rule 59(e) motion calls into question the correctness of a judgment. *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir.2002). The granting of such a motion "is an extraordinary remedy and should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 477 (5th Cir.2004). Under Rule 59(e), there are three possible grounds for altering or amending a judgment: (1) an intervening change in controlling law; (2) the availability of new evidence not previously avail-

able; or (3) the need to correct a clear error of law or prevent manifest injustice. *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir.2002). However, motions under Rule 59(e) "cannot be used to raise arguments which could, and should, have been made before judgment issued." *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir.1990).

Here, Plaintiffs do not assert an intervening change in the law or newly discovered evidence. Plaintiffs' motion asserts only a manifest error of law or fact. "Manifest error" is one that "is plain and indisputable, and that amounts to a complete disregard of the controlling law." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir.2004) (Internal citations omitted).

Having carefully reviewed Plaintiffs' motion, the Court is convinced that Plaintiffs vehemently disagree with the Court's ruling. However, the Court is not convinced that it has committed a manifest error of law or fact. Plaintiffs' motion does nothing more than re-urge arguments previously made or sets out arguments that should have been made. Plaintiff have not demonstrated a manifest error of law or fact and indeed cannot do so as virtually every court that has considered similar claims has found as this Court did. *See Demahy v. Schwarz Pharma, Inc.*, 11–31073, 2012 WL 5261492 (5th Cir. Oct.25, 2012) (Post-*Mensing*, however, a seeming majority of federal district courts to consider other state-law tort claims have found them to be preempted based on the fact that the plaintiffs' claims are failure-to-warn claims under different names. (Citations omitted). In addition, other courts have specifically held plaintiffs' design defect claims against generic metoclopramide manufacturers to be preempted based on *Mensing*. (Citations omitted). The result is that, with few exceptions,

[citation omitted] courts have held that state-law tort claims against generic drug manufacturers, including design defect claims, are preempted after *Mensing*.). Plaintiffs fare no differently as to the Brands.

Accordingly, Plaintiffs' Motion to Alter or Amend Judgment [Dkt. No. 81] is DENIED.

IT IS SO ORDERED.