**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 98-51114
Summary Calendar

ANITA PORTERFIELD AND JOHN PORTERFIELD,

Plaintiffs-Appellants,

v.

ETHICON, INC.,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Texas

August 18, 1999

Before DAVIS, DUHÉ, and PARKER, Circuit Judges.

PER CURIAM:

Anita and John Porterfield filed this lawsuit against Ethicon, the manufacturer of a mesh used to surgically repair Anita Porterfield's ventral hernia, for product liability, negligence, breach of warranty, fraud, and violations of the Texas Deceptive Trade Practices Act. The district court granted summary judgment in favor of Ethicon. Porterfields appeal. We affirm.

I.   BACKGROUND AND PROCEEDINGS

On November 19, 1993, Anita Porterfield underwent ventral hernia repair surgery during which Dr. George Mimari implanted Prolene polypropylene mesh in her abdomen to repair and/or reinforce her abdominal wall. In her deposition, Porterfield acknowledged that she began having problems with the mesh within a

1

week or two following the hernia surgery and that she "knew the problems were related to the mesh." In particular, she had experienced a number of problems, including severe hypertension, pain and tenderness in her lower abdomen, polyarthritis, fever, arthralgias, and chronic fatigue.

Shortly thereafter, Porterfield conducted research to determine if Prolene mesh could cause problems. Through her research, she learned that mesh can cause infection and migrate and become imbedded in other organs. In February 1994, Porterfield asked her surgeon, Dr. Mimari, whether her symptoms could be related to the mesh. On April 14, 1994, Porterfield wrote a letter to Dr. John P. Huff, advising him that she was experiencing abdominal pain around the area of the mesh implant. In this letter, Porterfield states that she and her primary physician, Dr. De Noia, suspected that her health problems were related to her hernia surgery.

On September 11, 1995, Porterfield underwent surgery to remove the mesh. During the surgery, Porterfield's surgeons had to remove part of her liver and stomach because the mesh had adhered to these organs. Following surgery, Porterfield suffered from an abdominal wall infection and was hospitalized from September 20 to September 25, 1995. The Porterfields filed this lawsuit on August 30, 1996.

## II.  DISCUSSION

On appeal, Porterfield raises two points of error: (1) the district court erred in granting summary judgment on the ground that her claims were barred by the statute of limitations;  and (2)

the district court misapplied the learned intermediary doctrine in dismissing her implied warranty of merchantability claim as a matter of law. We conclude that Porterfield's claims were barred by the statute of limitations and that her implied warranty claim failed as a matter of law.

Ethicon moved for summary judgment on the basis, *inter alia*, that Porterfield's claims were barred by the statute of limitations. The district court, accepting the Magistrate Judge's Recommendation, determined that Porterfield's claims accrued on April 14, 1994. Because this lawsuit was not filed until August 30, 1996, the district court ruled that Porterfield's claims were barred by the two-year statute of limitations. This Court reviews a grant of summary judgment *de novo*, applying the same standards as applied by a district court. *See Winters v. Diamond Shamrock Chemical Co.,* 149 F.3d 387, 402 (5th Cir. 1998).

The parties do not contest the application of Texas substantive law to this matter. In Texas, a two-year statute of limitations governs personal injury actions. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (Vernon 1986). A personal injury action must be filed within two years from the date the cause of action accrues. *See Winters,* 149 F.3d at 402. A cause of action accrues when the legal wrong is completed and the plaintiff is entitled to commence suit, even if the party is unaware of the wrong. *See id.*

Texas courts have adopted a discovery rule that tolls the statute of limitations until the plaintiff discovers, or through

3

the exercise of reasonable care and diligence should have discovered, the nature of the injury. *See Winters,* 149 F.3d at 403. Discovery does not necessarily mean "actual knowledge of the particulars of a cause of action." *Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1140 (5th Cir. 1997). Instead, the question is whether the plaintiff has "knowledge of facts which would cause a reasonable person to diligently make inquiry to determine his or her legal rights." *Vaught,* 107 F.3d at 1141-42.

The evidence in the record establishes that Anita Porterfield had knowledge of facts regarding the nature of her injury more than two years before the lawsuit was filed. Within weeks of her November 1993 surgery, Porterfield stated that she "knew that the problems were related to the mesh." In response to these problems, Porterfield conducted her own research to document a possible connection between her symptoms and the mesh and, in fact, she located information that suggested a connection. On April 14, 1994, Porterfield wrote to Dr. Huff stating: "[i]t is my concern, and also of my primary care physician, Dr. De Noia, that the problems that I have experienced since my hernia surgery in November are an inflammatory response to the surgical mesh implant." Porterfield was aware of the nature of her injury soon after her first surgery in November 1993 and, at the latest, by April 14, 1994.

Porterfield argues that she could not reasonably have discovered her cause of action until she had surgery on September 11, 1995 to remove the mesh. In her view, it was only on that date

4

that the surgeons learned that the mesh had attached itself to her liver. There is no requirement that Porterfield have actual knowledge of the particulars of the cause of action. *See Vaught*, 107 F.3d at 1141-42. Porterfield had knowledge that her physical problems were associated with the mesh no later than April 1994. Thus, under the discovery rule, her claims were barred by the two-year statute of limitations.

In her next point of error, Porterfield contends that the district court erred in dismissing her implied warranty of merchantability claim. Specifically, Porterfield contends that Ethicon failed to adequately warn her physician of risks associated with the use of mesh and that this failure caused her injury. The district court ruled, and we agree, that Porterfield has not established that the failure to warn caused her injury.

The main issue in Porterfield's implied warranty claim revolves around the application of the "learned intermediary" doctrine, where a physician stands as an intermediary between a product manufacturer and the patient. Under this doctrine, a product manufacturer is excused from warning each patient who receives the product when the manufacturer properly warns the prescribing physician of the product's dangers. *See Alm v. Aluminum Co. of America*, 717 S.W.2d 588, 591-92 (Tex. 1986). The product manufacturer relies on the physician to pass on its warnings. Notably, "when the warning to the intermediary is inadequate or misleading, the manufacturer remains liable for injuries sustained by the ultimate user." *See Alm*, 717 S.W.2d at

5

592. The learned intermediary doctrine applies in medical products liability actions in Texas. *See Bean v. Baxter Healthcare Corp.*, 965 S.W.2d 656, 663 (Tex. App.-Houston [14th Dist.] 1998, no writ) (applying learned intermediary doctrine to warnings applied to surgeons regarding breast implants).

In order to recover for a failure to warn under the learned intermediary doctrine, a plaintiff must show: (1) the warning was defective; and (2) the failure to warn was a producing cause of the plaintiff's condition or injury. *See Stewart v. Janssen Pharmaceutica, Inc.,* 780 S.W.2d 910, 911 (Tex. Ct. App.-El Paso 1989, writ denied) (citing *Technical Chemical Co. v. Jacobs,* 480 S.W.2d 602 (Tex. 1972)). If the physician was aware of the possible risks involved in the use of the product but decided to use it anyway, the adequacy of the warning is not a producing cause of the injury. *See Stewart,* 780 S.W.2d at 912. Because there is evidence that the warning was defective, we proceed to the second prong of the analysis.

Under the second prong, Porterfield has failed to present evidence that the failure to warn was a producing cause of her injury. In this case, Dr. Mimari, the surgeon who performed Porterfield's hernia surgery using the mesh, testified that at no time prior to Porterfield's surgery had he read Ethicon's package insert or any other Ethicon literature. Instead, Mimari relied on surgical literature, his own experience, and the experience of his colleagues in weighing the risks and benefits of surgery with the mesh. Mimari also testified that he was aware of the risks of

6

infection, adhesion, and immune response. Importantly, Mimari testified that the use of mesh outweighed the possible risks because without the mesh, the likelihood of successfully repairing the hernia would have been diminished. Because Porterfield's surgeon was aware of the possible risks of using the mesh but decided to use it anyway, the inadequate warning was not a producing cause of Porterfield's injury. *See Stewart*, 780 S.W.2d at 912.

### III. CONCLUSION

Based on the foregoing, the opinion of the district court is AFFIRMED.