REVISED August 26, 2011

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 23, 2011

Lyle W. Cayce
Clerk

No. 11-50007
Summary Calendar

LYNN BRANDAU,

Plaintiff - Appellant,

v.

HOWMEDICA OSTEONICS CORPORATION, Improperly named as Stryker
Orthopaedics; STRYKER CORPORATION; STRYKER SALES
CORPORATION,

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:10-CV-806

Before JOLLY, GARZA, and STEWART, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Lynn Brandau (Brandau) brought a products liability
suit against Defendants-Appellees Howmedica Osteonics Corporation et al.
(collectively HOC), alleging design, manufacturing, and marketing defects

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

1

relating to a Scorpio TS prosthesis implanted in her right knee. HOC moved to dismiss, and the district court granted the motion. For the following reasons, we REVERSE and REMAND.

I.

On October 2, 2007, Brandau underwent a right revision total knee orthoplasty during which her surgeon, Dr. David Templin (Templin), implanted a Scorpio TS knee replacement manufactured by HOC. In January 2008, Brandau began to experience pain in her right knee. The pain continued over time and got progressively worse, and on September 12, 2008, Templin took an x-ray of the prosthesis. According to the x-ray, it appeared that the stem on the tibial component of the Scorpio TS had come loose. Brandau sought and received a second opinion from Dr. Elliot Clements, who confirmed Templin's diagnosis. Subsequently, on February 24, 2009, Brandau underwent a second revision surgery. Upon removal of the Scorpio TS implant, it became apparent that the threaded stem on the tibial component had worked its way loose, causing instability of the prosthesis.

On September 10, 2010, Brandau filed suit in state court, alleging design, manufacturing, and marketing defects relating to the failure of the Scorpio TS device. Proceedings were removed to federal court and shortly thereafter, HOC filed a motion to dismiss according to Federal Rule of Civil Procedure 12(b)(6). HOC asserted that Brandau's claim accrued in January 2008 and therefore her September 10, 2010 filing was time barred. TEX. CIV. PRAC. & REM. CODE § 16.0003(a). In response, Brandau argued that the Texas discovery rule delayed accrual of her claim until September 12, 2008, when she received an x-ray and tentative diagnosis from Templin. After briefing from both parties, the district court granted the motion. Brandau appealed.

2

## II.

## A.

"We review de novo the grant of a 12(b)(6) motion to dismiss." Harrington v. State Farm Fire & Cas. Co., 563 F.3d 141, 147 (5th Cir. 2009). "This Court construes the complaint liberally in favor of the plaintiff, and takes all facts pleaded in the complaint as true." Id. (citing Campbell v. Wells Fargo Bank, 781 F.2d 440, 442 (5th Cir.1986)). Rule 12(b)(6) dismissal "is appropriate when the plaintiff has failed to allege 'enough facts to state a claim to relief that is plausible on its face' and fails to 'raise a right to relief above the speculative level.'" Nationwide Bi-Weekly Admin., Inc. v. Belo Corp., 512 F.3d 137, 140 (5th Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)).

## B.

## 1. Applicable Law

Texas substantive law applies to this diversity case. Foradori v. Harris, 523 F.3d 477, 486 (5th Cir. 2008) (citing Gasperini v. Ctr. For Humanities, Inc., 518 U.S. 415, 426–27 (1996)). In Texas, a two-year statute of limitations governs personal injury actions. TEX. CIV. PRAC. & REM. CODE § 16.003(a) ("[A] person must bring suit for . . . personal injury . . . not later than two years after the day the cause of action accrues."). Under this statute, "[a] cause of action accrues when the legal wrong is completed and the plaintiff is entitled to commence suit, even if the party is unaware of the wrong." Porterfield v. Ethicon, Inc., 183 F.3d 464, 467 (5th Cir. 1999).

However, "[t]he discovery rule exception defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action." Computer Assocs. Int'l, Inc. v. Altai, Inc., 918 S.W.2d 453, 455 (Tex. 1996). Texas courts have only employed

the "discovery rule exception in certain limited circumstances." Id. at 456. Specifically, for the discovery rule to apply, "the nature of the injury must be inherently undiscoverable and the injury itself must be objectively verifiable." Barker v. Eckman, 213 S.W.3d 306, 312 (Tex. 2006) (citing HECI Exploration Co. v. Neel, 982 S.W.2d 881, 886 (Tex. 1998)).

On appeal, Brandau argues that her injury is of an inherently undiscoverable nature. Therefore, the limitation period is extended by the Texas discovery rule. Under the discovery rule, Brandau contends that her injury was inherently undiscoverable until September 12, 2008, when Templin took an x-ray of the prosthesis and discovered that the stem was loose. Consequently, she argues, her cause of action accrued on that date, thus making her September 10, 2010 filing fall within the two-year limitations period. In the alternative, she argues that the record does not contain enough facts to determine, as a matter of law, that the discovery rule does not apply to her injury.

HOC contends that the district court was correct in granting its 12(b)(6) motion and sets forth three main arguments. First, HOC contends that Brandau failed to adequately plead the discovery rule in her petition as required by Texas state law and it was therefore inapplicable. Second, HOC argues that, as a matter of law, the Texas discovery rule does not apply to Brandau's claim. Thus, Brandau's injury accrued in January 2008 when she first began to experience pain in her knee, making her claim— filed on September 10, 2010— barred by the two-year limitations statute. TEX. CIV. PRAC. & REM. CODE § 16.0003(a). Finally, HOC argues that, even if the discovery rule could apply, it was clear from her petition that Brandau's accrual date was in January 2008, making the filing nine months too late.

4

## 2. Pleading Requirements

HOC argues that Brandau did not raise the discovery rule in her pleading, as required by Texas state court. Thus, HOC contends Brandau should be barred from claiming that the discovery rule applies. We disagree. HOC's argument fails because, while Texas courts may require plaintiffs to include specific reference to the discovery rule in pleadings, "[t]he discovery rule need not be specifically pleaded in federal court." TIG Ins. Co. v. Aon Re, Inc., 521 F.3d 351, 357 (5th Cir. 2008). Under Federal Rule of Civil Procedure 8, "it is enough that the plaintiff plead sufficient facts to put the defense on notice of the theories on which the complaint is based." Id. (internal quotation marks omitted). The facts pleaded by Brandau—that she did not start to experience pain until three months after her surgery and did not receive a tentative diagnosis until September 2008—gave HOC sufficient notice that Brandau might assert that the discovery rule applies.

## 3. Statute of Limitations

We have carefully reviewed the record and conclude that Brandau has pled facts sufficient to survive a motion for dismissal under Federal Rule of Civil Procedure 12(b)(6). Therefore, the district court's judgment to dismiss was improper at this stage. Before we discuss why we disagree with the district court's judgment, as a preliminary matter we address two holdings by the district court we conclude are misplaced.

### (a)

First, we have found no case law supporting the district court's conclusion that, if an injury is discovered inside the usual limitations period, the accrual date cannot, as a matter of law, be delayed by the discovery rule. At least one Texas court of appeals case has explicitly held to the contrary. In Dike v. Peltier

5

Chevrolet, Inc., the court of appeals concluded that, if discovery of an injury within the limitations period placed an irrefutable burden on the injured party to file suit within the usual period, a plaintiff who discovered her injury on the last day of the applicable period would "be forced to file a lawsuit within one day or be thereafter barred." —S.W.3d—, 2011 WL 1205246, at *11 n.12 (Tex. App.—Texarkana 2011, no pet.). We agree with this reasoning. Thus, we conclude that the fact that Brandau discovered her injury within the limitations period does not bar her from applying the discovery rule to delay accrual of her cause of action.

Next, the district court found that, even assuming the discovery rule applied to Brandau's claim, it was nevertheless time barred. The district court held that Brandau's cause of action accrued in January of 2008, as her pain provided her with "knowledge of such facts as would cause a reasonably prudent person to make an inquiry that would lead to discovery of the cause of action." Vaught v. Showa Denko K.K., 107 F.3d 1137, 1140 (5th Cir. 1997). In support of this conclusion, the court cites Bell v. Showa Denko K.K., 899 S.W.2d 749, 754 (Tex. App.—Amarillo 1995, writ denied), and Vaught, 107 F.3d at 1142. HOC urges us to adopt this reasoning. However, we are not persuaded by this reasoning. Both the Bell and Vaught court's held that the plaintiffs' cause of action accrued only after they received some information regarding a tentative diagnosis, not when they began to experience pain or discomfort. See Bell, 899 S.W.2d at 754 (finding that the statute of limitations began to run after plaintiff received a letter with a preliminary diagnosis from her physician); Vaught, 107 F.3d at 1141 (5th Cir. 1997) (finding that plaintiff's cause of action accrued after she "read the newspaper article [concerning her ailments]; connected her symptoms with [a particular disease]; and contacted the lawyer's office").

Although not binding precedent, our decision in Pavich v. Zimmer, Inc., No. 97-20901, 1998 WL 612290 (5th Cir. Aug. 27, 1998), is directly on point. In Pavich, we applied the Texas discovery rule to a products liability case involving surgically implanted rods. Id. at *2. We held that "[a]lthough [Pavich] began to experience increased pain in early 1994," it was not until after a consultation on May 12, 1994 "that he acquired the knowledge he needed to discover he had a cause of action." Id. It was on that date that Pavich's doctor reviewed the intravenous pyelogram, a series of x-rays taken of the kidneys, and discovered probable breaks in the rods implanted in Pavich's back. Id. Therefore, it was not when Pavich began to experience pain that his injury accrued, but after he received a tentative diagnosis from his doctor. Id.

The facts in Pavich are analogous to the facts in the present case. Like Pavich, Brandau began to experience pain months before she received an x-ray from her doctor and discovered the tentative cause of her injury. Therefore, as we did in Pavich, we conclude that Brandau's cause of action did not automatically accrue when she began to experience pain. We now turn to the district court's judgment.

(b)

The district court held that, as a matter of law, Brandau's injury was not inherently undiscoverable because Brandau discovered her injury within the limitations period. Thus, the discovery rule did not apply. However, this is not the proper inquiry for determining whether an injury is inherently undiscoverable under Texas law.

As previously mentioned, in order for the Texas discovery rule to apply, the injury must be (1) "inherently undiscoverable" and (2) "objectively verifiable." Barker, 213 S.W.3d at 312. The parties do not dispute the fact that

7

the pain was caused by the failure of the Scorpio TS, making Brandau's injury objectively verifiable. Therefore, our analysis focuses on whether the injury is "inherently discoverable." "'An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence.'" Via Net v. TIG Ins. Co., 211 S.W.3d 310, 313–314 (Tex. 2006) (quoting Wagner & Brown, Ltd. v. Horwood, 58 S.W.3d 732, 734–35 (Tex. 2001)). Whether an injury is inherently undiscoverable "is decided on a categorical rather than case-specific basis." Id. at 314. This "approach means we do not determine when a particular injury was actually discovered in any particular case, but rather whether that case is of the type to which the discovery rule applies." Apex Towing Co. v. Tolin, 41 S.W.3d 118, 122 (Tex. 2001) (citing S.V. v. R.V., 933 S.W.2d 1, 6 (Tex. 1996)). Thus, the district court's focus on whether Brandau discovered her injury within the limitations period is misplaced. The proper inquiry is whether Brandau's injury is in a category of injuries that have been identified as inherently undiscoverable under Texas law.

Although there is no Texas case that directly places Brandau's injury in a category to which the discovery rule is applicable, the Fifth Circuit applying Texas law has repeatedly held that the discovery rule defers the accrual of injuries resulting from implanted devices. See, e.g., Porterfield, 183 F.3d at 467 (applying the discovery rule to a products liability claim when plaintiff suffered problems resulting from surgically implanted mesh); Woodruff v. A.H. Robbins Co., 742 F.2d 228, 229 (5th Cir. 1984) (applying the discovery rule to a products liability claim where plaintiff suffered complications from a defective IUD); Mann v. A.H. Robbins Co., 741 F.2d 79, 79–81 (5th Cir. 1984) (same). As Brandau asserts products liability claims based on injury from a surgically implanted device, the discovery rule is applicable in this case.

Moreover, we disagree with HOC's argument that, because an x-ray was able to reveal the provisional cause of Brandau's injury, the injury was not inherently undiscoverable. Our analysis in Pavich indicates that the method of determining the cause of an injury does not dictate whether an injury is discoverable. See Pavich, 1998 WL 612290, at *2. Furthermore, as previously explained, the proper inquiry for determining whether an injury is inherently undiscoverable is not whether the specific injury was discovered in this case, but whether an injury fits into a specific category that has been deemed inherently undiscoverable. See Apex, 41 S.W.3d at 122.

In sum, Rule 12(b)(6) dismissal is only appropriate "when the plaintiff has failed to allege 'enough facts to state a claim to relief that is plausible on its face' and fails to 'raise a right to relief above the speculative level.'" Nationwide Bi-Weekly Admin., Inc., 512 F.3d at 140 (5th Cir. 2007) (quoting Twombly, 550 U.S. at 555, 570). Here, Brandau alleges that upon removal of the prosthesis it became apparent that the threaded stem on the tibial component had worked its way loose, causing instability. Additionally, she alleges she first became aware of a possible defect in the prosthesis on September 12, 2008, when Templin reviewed an x-ray of the device. Construing the complaint liberally in favor of Brandau, we conclude that she has pled facts sufficient to survive a 12(b)(6) motion. Moreover, our review of Texas and Fifth Circuit cases applying the discovery rule to injuries such as Brandau's indicates that dismissal typically occurs at the summary judgment phase, after facts added to the record can lead to more fully formed conclusions. See, e.g., Porterfield, 183 F.3d at 466; Vaught, 107 F.3d at 1147; Bell, 899 S.W.2d at 760; Woodruff, 742 F.2d at 230; Mann, 741 F.2d at 82. Nothing in our holding should be construed as precluding further factual development of the record that may bear on the continued viability of

Brandau's claim.

III. Conclusion

For the aforementioned reasons, we REVERSE the district court's judgment and REMAND this case for further proceedings consistent with this opinion.

REVERSED AND REMANDED.